FILED
2013 APR 10 PM 12:09
US BANKRUPTCY COURT
EASTERN DISTRICT OF WI

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

George C. Panos,   Case No. 13-21338-GMH

Debtor.   Chapter 7

## DECISION*

The debtor, George Panos, moves for sanctions against Commerce State Bank. Commerce refused to cancel a state-court hearing on whether a default judgment should be entered against Panos's attorneys based on their failure to answer a pre-bankruptcy garnishment action Commerce had filed against them. Although the state court cancelled the hearing and dismissed Commerce's action without prejudice, Panos contends that Commerce's refusal violated the automatic stay. Panos's motion will be denied.†

I.

A Wisconsin state court awarded Commerce a $30,635 deficiency judgment against Panos. Commerce sought to collect by garnishing DeWitt Ross & Stevens S.C., the law firm Panos retained to file his bankruptcy, alleging that DeWitt held Panos's non-exempt property. All proceedings against Panos came to a halt when Panos commenced a Chapter 13 case in August 2012, automatically staying acts, including the continuation of judicial proceedings, to collect pre-petition debts from Panos or from the property of his bankruptcy estate. 11 U.S.C. §362(a)(1), (2), (3), & (6).

---

* This decision states the rationale for denying the debtor's Motion for Sanctions for Violation of the Automatic Stay, CM-ECF No. 7.

† The parties do not dispute the dispositive facts, which come principally from state-court filings that are subject to judicial notice. See *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996).

Panos's Chapter 13 case was short lived. His 60-month plan proposed to pay about $63,000 to his attorneys, the IRS, and the Wisconsin Department of Revenue, leaving nothing for those holding unsecured claims of almost $120,000, which, according to Panos's bankruptcy petition, included Commerce. On January 10, 2013, twelve days before a scheduled hearing on Commerce's objection to the plan, Panos dismissed the case.

Four days later, Commerce moved the state court, pursuant to Wis. Stat. §806.02, for a $31,843.98 default judgment against DeWitt for purportedly failing to answer the garnishment complaint within the 20 days afforded by Wis. Stat. §812.11. DeWitt objected to the motion on January 15, contending that 11 U.S.C. §108(c), which generally extends the time to commence or continue non-bankruptcy proceedings on a claim against the debtor until 30 days after the bankruptcy stay is terminated, afforded it additional time to answer. On the same day, the state court scheduled a hearing on Commerce's default motion for January 28.

Three days before the scheduled hearing, DeWitt, on its own behalf, filed an answer to the garnishment complaint, pleading that it neither possessed nor controlled Panos's property and that it was not indebted to Panos. DeWitt specifically averred:

> 1. Prior to the issuance of [Commerce's garnishment] Complaint, Defendant George Panos had engaged DeWitt for the purpose of preparing and initiating a filing under the Bankruptcy Code. As a condition of that engagement, DeWitt required and Mr. Panos paid to DeWitt an advance (a/k/a, "retainer") of $3,000.00.
>
> 2. DeWitt provided the legal services for which it was engaged, and the advance fees were applied accordingly.

(CM-ECF No. 17, 17-1, 40.) On the same day, Commerce filed a reply in support of its default judgment motion. Commerce argued that (1) §362(a) did not stay DeWitt's

2

obligation to answer Commerce's garnishment complaint, and (2) §108(c) did not apply to Commerce's garnishment claim against DeWitt. Commerce restated its request that "[t]he motion for default should be granted and the requested judgment entered against garnishee", i.e., DeWitt. (*Id.* at 35.)

The state court rescheduled the hearing on Commerce's default motion for February 22. And, on February 1, Commerce filed a motion to strike DeWitt's answer as untimely. In a supporting affidavit, Commerce's counsel contended, "according to Wisconsin law, by fil[]ing an untimely answer, Garnishee is liable to plaintiff for plaintiff's entire judgment entered against the debtor, plus the costs of this action." (*Id.* at 31.)

On February 6, Panos, represented by DeWitt, commenced this Chapter 7 case. The following day, DeWitt told both the state court and Commerce about Panos's new bankruptcy proceeding. DeWitt also asked Commerce to cancel the default judgment hearing scheduled for February 22. Commerce refused.

Panos then moved this Court for sanctions against Commerce, alleging that Commerce's refusal to cancel the February 22 hearing violated the automatic stay. On the same day, February 19, DeWitt filed a further response in state court opposing Commerce's default judgment motion on grounds that duplicated the arguments made in this Court. On February 21, the state court dismissed Commerce's action without prejudice and directed that the "case may be reopened upon notice that[] [t]he bankruptcy proceedings have been terminated or the bankruptcy stay has been lifted." (*Id.* at 1.)

On March 8, the bankruptcy stay terminated by operation of 11 U.S.C. §362(c)(3)(A). Panos, who, as explained above, had a prior Chapter 13 case dismissed within one year of commencing this case under Chapter 7, failed to make a timely request to extend the stay upon proof that he filed in good faith. See 11 U.S.C. §362(c)(3)(B).

II.

While Commerce is now unrestrained by §362(a), Panos presses on with his request that this Court sanction Commerce for violating the automatic stay during its 30-day existence. Panos argues that once he filed for bankruptcy, §362(a) required Commerce to take affirmative steps to ensure that its garnishment action against DeWitt proceeded no further.

Panos's sanctions motion raises two preliminary questions. First, Panos moves for "an award of all costs and fees incurred by Panos defending the [state-court] Case subsequent to the filing of the bankruptcy petition in this Case." (CM-ECF No. 7, 3.) Given that the only post-bankruptcy state-court filings DeWitt made were on its own behalf, one wonders what costs and fees Panos incurred defending that case. See 11 U.S.C. §362(k) (allowing individuals to recover damages for injuries caused by willful violations of the automatic stay). Panos also seeks punitive damages. But §362(k) may be understood to authorize an award of punitive damages only to individuals actually injured by a stay violation, see *McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168–69 (B.A.P. 9th Cir. 1995), and, in all events, Commerce's do-nothing response to Panos's bankruptcy would not warrant punitive damages.

Second, Panos's claim that Commerce violated the automatic stay depends on §362(a) creating an affirmative duty to act: Again, after Panos filed for bankruptcy on February 6, Commerce did nothing other than refuse a demand that it cancel an upcoming motion hearing. As a matter of first principles, one might wonder where in §362(a) Panos finds this duty. By its terms §362(a) stays—that is, prohibits—the performance of a variety of acts to collect pre-petition debts. Even §362(a)'s prohibitions on the continuation of proceedings and enforcement of judgments seem most naturally limited to stopping acts that seek relief against the debtor or are undertaken to control property of the debtor or his bankruptcy estate. Compare *Bank of Am. v. Johnson (In re Johnson)*, 479 B.R. 159, 170 (Bankr. N.D. Ga. 2012) ("In the case of a continuing wage

4

garnishment [under Georgia law], the automatic stay imposes an affirmative obligation on the creditor to take careful and deliberate steps to stop the employer's withholding of postpetition earnings"(internal quotation marks omitted)). Idly awaiting a hearing that was scheduled before the bankruptcy case began is less than a perfect fit with §362(a)'s text. Even if no one had attempted to cancel the hearing, the state court simply could have decided for itself whether §362(a) enjoined the adjudication of Commerce's motion. See *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986); *Wisconsin v. Weller (In re Weller)*, 189 B.R. 467, 471 (Bankr. E.D. Wis. 1995); *GMAC Mortg. Corp. of Pa. v. Gisvold*, 572 N.W.2d 466, 473 (Wis. 1998).

But Commerce makes nothing of these issues. It does not oppose the motion based on a lack of injury to Panos. And it concedes that if its state-court motion had sought relief against Panos or estate property, §362(a) would have required it to take steps to halt the motion hearing. (CM-ECF No. 18, Audio Attach. at 1:05:06–1:07:35, 1:14:11–1:15:36.) The preliminary questions, therefore, can be left unanswered.

### III.

Commerce argues that its motion for default judgment did not violate §362(a) because the motion sought relief from DeWitt, rather than from Panos or his bankruptcy estate. While Panos is a defendant in the action in which Commerce moved for a default judgment (Commerce filed its garnishment complaint against DeWitt in an action it had previously commenced against Panos), that fact is insufficient to make the stay applicable to proceedings seeking relief against DeWitt. See *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314–15 (7th Cir. 1983).

Panos, however, contends that Commerce cannot press on against DeWitt because its alleged liability is premised solely on an allegation that it is either indebted to Panos or holds his non-exempt property. Panos relies on several cases holding that §362(a) stays garnishment actions seeking to collect pre-petition debts from non-debtors who are indebted to the debtor or hold the debtor's property. But most of these cases

are ones in which creditors sought to use post-petition garnishment proceedings to recover pre-petition debts from debtors or their estates. See, e.g., *In re Russell*, 441 B.R. 859, 861 (Bankr. N.D. Ohio 2010); *Myers v. Miracle Fin., Inc. (In re Myers)*, 402 B.R. 370, 371 (Bankr. M.D. Ala. 2009); *Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 656 (Bankr. W.D. Wis. 1996); *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 341–42 (B.A.P. 9th Cir. 1994); *O'Connor v. Methodist Hosp. of Jonesboro, Inc. (In re O'Connor)*, 42 B.R. 390, 391 (Bankr. E.D. Ark. 1984).

That's not this case. The relief sought by Commerce's default judgment motion, the hearing on which Panos insists §362(a) required Commerce to cancel, is payment from DeWitt for failing to timely answer the garnishment complaint. Commerce's motion makes this clear:

1. PLEASE TAKE NOTICE that plaintiff, Commerce State Bank, moves the court pursuant to Wis. Stat. § 806.02 for a default judgment against defendant, De[W]itt Ross & Stevens, SC for $31,843.98.

2. ...

3. The grounds for this motion are, as set forth in the accompanying affidavit, that defendant, DeWitt Ross & Stevens, SC, as Garnishee, has failed to respond to the Garnishment Summons and Complaint for Non-Earnings within 20 days as required by Wis. Stat. § 812.11, that no issue of law or fact has been joined, and the time for joining issue has expired.

(CM-ECF No. 17, 17-2, 6.)

Wisconsin's non-earnings garnishment statute, Wis. Stat. §§812.01–812.24, does not expressly provide a default remedy. But it does incorporate Wisconsin's default judgment statute, Wis. Stat. §806.02: "Except as otherwise provided in this subchapter,

6

the general rules of practice and procedure in chs. 750 to 758 and 801 to 847 apply to actions under this subchapter." Wis. Stat. §812.01(2).

Section 806.02 authorizes plaintiffs to move for judgment against a non-answering defendant "according to the demand of the complaint." Wis. Stat. §806.02(2). And the non-earnings garnishment summons set out in §812.04 describes this risk of default: "In case of your failure to answer, judgment will be entered against you for the amount of plaintiff's judgment against the defendant and costs, of which the defendant will also take notice." Wis. Stat. §812.04(2). The summons and complaint Commerce served on DeWitt contained similar language in boldface: **"If you fail to answer, judgment will be entered against you for the amount of the creditor's judgment against the debtor plus the costs of this action."** (CM-ECF No. 17, 17-2, 25.) While the summons itself does not create a right to relief, §812.04's requirement that the garnishment summons include this language strongly indicates that a defaulting garnishee can be held liable under §806.02 for the amount of the plaintiff's judgment against the debtor. See also *Sprayer Supply, Inc. v. Feider*, 395 N.W.2d 624, 627–29 (Wis. Ct. App. 1986) (affirming denial of relief from default judgment entered against garnishee in the amount of plaintiff-creditor's judgment against debtor).

Commerce's motion for a default judgment, unlike its non-earnings garnishment claim against DeWitt, does not depend on DeWitt being indebted to Panos or holding Panos's non-exempt funds. The motion's claim to relief depends only on DeWitt's failure to serve a timely answer and satisfaction of any other §806.02 requirements. Thus, Commerce's refusal to adjourn the motion hearing was not a continuation of proceedings against Panos, an act to collect a pre-petition claim against Panos, or an act to enforce a pre-petition judgment against estate property.

IV.

In further support of this conclusion, Commerce relies on *Kenosha Hospital & Medical Center v. Garcia*. 2004 WI 105, 683 N.W.2d 425. *Kenosha* holds that a creditor-

plaintiff's effort to obtain a default judgment against a garnishee for the entire amount owed by a judgment debtor who has filed for bankruptcy does not violate §362(a). *Id.* ¶59–62. Commerce contends that *Kenosha* is "binding precedent" that controls the outcome in its favor. (CM-ECF No. 11, 1.) As Panos points out, however, that's a bit of an overshoot.

The ultimate issue presented here and in *Kenosha*—whether pursuit of a default judgment against a garnishee violates the automatic stay—is one of federal, not state law. As *Kenosha* frames it, the "issue raised is whether [the plaintiff-creditor] violated the automatic stay in bankruptcy provided by 11 U.S.C. §362(a) when it moved the circuit court for judgment against the garnishee". 2004 WI 105, ¶45. On the construction and application of Title 11 of the United States Code, only decisions of the United States Supreme Court and the Seventh Circuit are controlling. See *Pigee v. Israel*, 670 F.2d 690, 694–95 (7th Cir. 1982).

That said, *Kenosha* is an authoritative interpretation of Wisconsin's garnishment law—at least the earnings garnishment statute there at issue and related state-law procedures. See *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Because Panos disputes the extent to which the circumstances in *Kenosha* parallel those here, a greater explanation of *Kenosha* is in order.

Kenosha Hospital obtained a judgment for unpaid medical services against Garcia, the debtor. 2004 WI 105, ¶5. The hospital tried to collect by commencing an earnings garnishment proceeding against Garcia's employer, Richter Industries. *Id.* ¶6. Richter failed to respond to a notice of garnishment, the service of which triggers an earnings garnishee's obligation to pay available earnings of the debtor to the garnishing creditor. See *id.* ¶¶6–7; Wis. Stat. §§812.35(5) & 812.39(1). The hospital moved for a default judgment against Richter in the full amount of its judgment against Garcia. 2004 WI 105, ¶6. At a hearing on the motion, the circuit court ordered that Richter owed the hospital that full amount as a result of Richter's failure to respond to the

garnishment notice. *Id.* ¶9. A few days later, Garcia filed for bankruptcy. *Id.* About two hours after Garcia filed bankruptcy, the circuit court directed entry of judgment against Richter in the amount of Kenosha's judgment against Garcia, minus $527.64 that Richter had already paid. *Id.* After the circuit court refused to vacate the default judgment, Richter appealed, arguing that Kenosha had not properly served it and that §362(a) deprived the circuit court of authority to enter judgment in the amount owed by the debtor. *Id.* ¶11–12.

The Wisconsin Supreme Court ruled that personal service of the default motion was required and that a remand was necessary to allow the circuit court to consider whether, in light of the service ruling, the judgment should be vacated. *Id.* ¶43. These rulings, in turn, required the court to decide whether §362(a) barred the hospital's pursuit of a default judgment to recover the full amount owed by the debtor from Richter as garnishee. The court held that §362(a) did not bar entry of a default judgment against Richter, rejecting a line of bankruptcy court decisions, championed here by Panos, that conclude that §362(a) prohibits efforts to collect from defaulting garnishees. *Id.* ¶60–61. The court reasoned that a garnishee who fails to comply with the earnings garnishment statute can be held personally liable for the amount owed by the debtor and pursuit of a judgment based on that personal liability "does not involve . . . the debtor[] or property of the [debtor's bankruptcy] estate." *Id.* ¶59.

Panos argues that *Kenosha* offers no guidance because the circumstances there are materially different from those here. He relies in part on the fact that in *Kenosha* the parties assumed that Richter's failure to answer the earnings garnishment notice made it liable under Wis. Stat. §812.41. Section 812.41 provides, "If the garnishee fails to pay over funds to which the creditor is entitled under this subchapter within the time required under s. 812.39, the creditor may, upon notice to all of the parties, move the court for judgment against the garnishee in the amount of the unsatisfied judgment plus interest and costs." Wis. Stat. §812.41(1). Commerce's default judgment motion against

DeWitt is not based on any similar provision because Wisconsin's non-earnings garnishment statute does not contain one.

But, as explained above, §806.02 creates a right to relief against a defaulting non-earnings garnishee for the full amount of the debt. And *Kenosha* left open on remand whether §812.41 actually applies in the default context or whether §812.41 is simply a remedy applicable when an answering garnishee fails to pay garnished earnings. 2004 WI 105, ¶22 n.17. By ordering further proceedings without regard to whether Richter's default remedy might arise under §806.02, rather than §812.41, the court's decision suggests that any distinction between the two is irrelevant to a circuit court's ability to enter a default judgment without violating §362(a).

Panos further contends that *Kenosha* is inapplicable because a default judgment was "entered" in *Kenosha* (CM-ECF No. 21, 4 n.3) before the bankruptcy was commenced, whereas here "no judgment [had been] entered against De[W]itt at the time that the automatic stay took effect" (CM-ECF No. 15, 8–9). According to Panos, until a default judgment is entered and enforceable, any proceeding to recover against the garnishee is one to recover against the debtor, his property, or against property of his bankruptcy estate.

Panos's effort to find a limiting principle misreads *Kenosha*. The circuit court orally ordered that Richter, the garnishee, was in default before the debtor filed for bankruptcy. 2004 WI 105, ¶9. But, under Wisconsin law, an oral order must be reduced to writing and entered to become an enforceable judgment. See Wis. Stat. §§806.06(1)(a)&(b), 815.02, & 815.04(1)(a). The judgment in *Kenosha* was entered post-petition. 2004 WI 105, ¶9. Thus, *Kenosha* would flunk the very principle Panos seeks to find there.

More important, this inquiry into when a garnishee's default liability has been established poses the wrong question. Section 362(a)'s text and purpose suggests instead an examination of the basis on which relief is pursued. When a court is called on

to hold a garnishee liable *in personam* for its failure to answer, neither the debtor nor estate property is at risk. This is the basis on which Commerce now pursues DeWitt. According to Commerce, DeWitt should have answered the garnishment complaint within 20 days of August 8, 2012, the date on which it was served, and, having failed to do so, DeWitt became personally liable to Commerce in the full amount of the pleaded debt. (CM-ECF No. 17, 17-2, 6, 16; see also *id.* at 8.)

Commerce may be wrong about when DeWitt's answer was due. Panos filed his Chapter 13 case on August 27, 2012, and some courts have held that §362(a) suspends a garnishee's duty to answer. See *Johnson*, 479 B.R. at 170 ("the automatic stay prohibits any act to enforce a garnishee's obligation to answer . . . ."); but see *In re Gray*, 97 B.R. 930, 937 (Bankr. N.D. Ill. 1989) (§362(a) did not prevent garnishee from filing an answer to garnishment interrogatories). Most likely, as DeWitt argues in state court, §108(c) extended DeWitt's answer deadline to February 9, 2013—30 days after the dismissal of Panos's Chapter 13 case. See 11 U.S.C. §108(c)(2); see also *Lucas v. Integrated Health Serv. of Lester, Inc.*, 601 S.E.2d 701, 703 (Ga. Ct. App. 2004) (holding §108(c)(2) extended the deadline to answer a state-court complaint to 30-days after notice of termination of the stay when bankruptcy was filed before answer was due). Commerce's garnishment claim is a claim to recover Panos's property, and 11 U.S.C. §102(2) treats such a claim as "a claim against the debtor" to which §108(c)'s 30-day extension applies. See *Miner Corp. v. Hunters Run Ltd. P'ship (In re Hunters Run Ltd. P'ship)*, 875 F.2d 1425, 1427 (9th Cir. 1989); see also *Valley Transit Mix of Ruidoso, Inc. v. Miller*, 928 F.2d 354, 355–56 (10th Cir. 1991). If DeWitt was entitled to the additional 30 days, its January 25, 2013 answer was timely, and Commerce is not entitled to a default judgment.

But these are issues for the state court to decide. See *Pettibone Corp. v. Easley*, 935 F.2d 120, 123–24 (7th Cir. 1991). For present purposes it is enough to hold that Commerce's default judgment motion pursued relief personal to DeWitt, rather than seeking to recover against Panos or estate property. Consequently, the February 22

11
Case 13-21338-gmh    Doc 25    Filed 04/10/13    Page 11 of 13

state-court hearing to adjudicate that motion was not stayed by §362(a), and it follows necessarily that §362(a) did not require Commerce to cancel the hearing. (Of course, if the state court had denied Commerce's default judgment motion on February 22, Commerce could not have proceeded further against DeWitt until the stay terminated, because, at that point, Commerce's only claim to relief would have depended on recovering estate property from DeWitt.)

Panos also argues that *Kenosha* was wrongly decided, contending that efforts to collect a debtor's pre-petition debts from any source are barred by §362(a). But *Kenosha* is consistent with §362(a)'s text, which by its terms stays acts against the debtor or property of the estate. And, contrary to Panos's reading, seeking a default judgment against a garnishee is not an "act to collect . . . a claim against the debtor." 11 U.S.C. §362(a)(6). It is, as explained above, an act to collect from the garnishee personally. That the creditor's recovery from the garnishee in default reduces the debtor's obligation to that creditor does not make the debtor, the estate, or other creditors worse off, since the garnishee may satisfy the default judgment only with its own funds, not those of the debtor or the estate. See *Kenosha*, 2004 WI 105, ¶60; *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, 759 (Bankr. E.D. Tenn. 2002).

Panos's proposed rule that §362(a) stays all efforts to collect debtors' pre-petition debts from third-parties would be difficult to square with the many cases holding that efforts to collect from a debtor's guarantors, sureties, and insurers do not violate §362(a). See, e.g., *United States v. Wright*, 57 F.3d 561, 562 (7th Cir. 1995) ("The automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt."); *In re Moore*, 318 B.R. 679, 682 (Bankr. W.D. Wis. 2004). If, for example, the stay does not apply to one who is individually liable on a guarantee, it also should not apply to a garnishee who is individually liable for default.

V.

In sum, §362(a) did not constrain Commerce's pursuit of a default judgment against DeWitt. Panos's motion for sanctions is denied. It will be so ordered.

April 10, 2013.

                                                G. Michael Halfenger
                                                United States Bankruptcy Judge